PER CURIAM:
This claim was submitted for decision based upon the allegations in the Notice of Claim and respondent's Answer. Claimant seeks payment in the amount of $31,270.00 from the respondent for educational and treatment services which it provided to certain juveniles referred to it by various governmental entities during the 2005-2006 fiscal year (from July 1, 2005 to June 30, 2006). In its Answer, the respondent admitted that the portion of the claim in the amount of $ 17,700.00 for services rendered from January 2006 through June 2006, may be paid if claimant establishes that there was a contract in place on January 3, 2006. The issue before the Court is whether the claimant is entitled to recover both the $17,700.00 and the remaining amount of the claim in the amount $13,570.00, which includes the cost of services provided to juveniles on behalf of the State from August 2005 through December 2005. The Court, having reviewed the transcript of the hearing, the briefs filed by the parties, and documentation submitted with the claim, is of the opinion to make an award in the amount of $31,270.00 for the reasons more fully set forth below.
The claimant is a nonprofit agency in the State of Pennsylvania which has a longstanding history of providing educational and treatment services to court-placed and dependent youth. The respondent does not seek the claimant’s services, but rather the Department of Health and Human Resources (“DHHR”), county probation officers, and judges refer juveniles for specialized services provided by claimant which are not available in West Virginia. The respondent is responsible for paying for the special education costs incurred for these juveniles who are placed in out-of-state facilities if the juveniles are in the legal custody of the DHHR and if they have disabilities under the Individuals with Disabilities Education Act.
The claimant contends that the respondent would be unjustly enriched if it was not required to pay for the full amount of the services which it provided on behalf of the State. In addition, it is claimant’s position that it was never required by respondent to submit or execute its contract prior to the beginning of the fiscal year. The claimant states that it has never submitted its contracts prior to the start of the fiscal year in the past, and it always received payment for the full amount for its services. Thus, the claimant anticipated that it would receive payment for the services it rendered to juveniles on behalf of the State when it sent the executed contract to respondent on May 26,2006, which was one month prior to the close of the 2005-2006 fiscal year.
Respondent avers that the claimant has unclean hands and should be denied recovery because it continuously refused to comply with the respondent’s requirement that there be an annual contract in place before payment would be rendered to claimant for its services. Respondent sent a letter to claimant on March 15,2004, which stated that the respondent would not process invoices without a signed agreement in place. In addition, the contract renewal package was mailed to the claimant in April 2005; faxed in August 2005; mailed in October 2005; mailed in January 2006; and an e-mail was sent to the claimant in April 2006 to remind it that the contract had still not been received.
Judy Rutter, chief administrative officer for claimant, testified for claimant that *77 respondent was sent an executed contract for the 2005-2006 fiscal year on three occasions. First, the claimant sent a signed contract to the respondent at least by January 3,2006. Second, an undated copy of the contract was placed in the claimant’s file, which was pursuant to the claimant’s standard business practice and demonstrates that the document was mailed to the respondent. Third, an executed contract was sent to the respondent on May 26, 2006, via certified mail.
During the 2004-2005 fiscal year, Ms. Rutter stated that even though the respondent received claimant’s contract on October 28, 2004, which was after the start of the fiscal year, the claimant was still paid for the entire fiscal year. However, the contract was not processed until December 13, 2004. Therefore, the respondent also bears some of the responsibility for the administrative delays.
Ghaski Browning, Special Education Coordinator in the Office of Assessment and Accountability, testified for respondent that she does not have the authority to process an invoice to the Finance Department without first receiving a contract that had been approved by the Purchasing Division. Ms. Browning stated that a contract package was originally sent to claimant in April 2005 and should have been returned by May 2005 to enable the respondent to have the contract by July 1,2005, before the beginning of the school year. Ms. Browning stated that despite the respondent’s multiple attempts to send a contract to claimant, a properly executed contract was not received until May 31,2006.
Phillip Uy, Assistant Director in the Office of Internal Operations, testified that if the respondent routinely authorized payment for services when there was no contract, then it would be violating its fiduciary responsibilities and it would be penalized in the event of an audit. Since the respondent did not receive a properly executed contract until May 2006, the respondent contends that the claimant should be limited to receiving payment for services rendered from the beginning of May 2006 through June 2006.
The Court finds that principles of equity and fairness require that the claimant be compensated for the services it provided to the State. West Virginia Code §14-2-13(1) provides that the Court has jurisdiction to hear all claims which the state should in equity and good conscience discharge and pay. “Unjust enrichment of a person occurs when he has and retains money or benefits which injustice and equity belong to another... The benefit may be an interest in money, land, chattels, or choses in action; beneficial services conferred; satisfaction of a debt or duty owed by him; or anything which adds to his security or advantage.” Dunlap v. Hinkle, 317 S.E.2d 508, 512 (W.Va. 1984).
The Court is of the opinion that the respondent would be unjustly enriched if the claimant was denied full payment for its services during the 2005-2006 fiscal year. Here, the benefit of the claimant’s services has already been received by the State. The Court finds that it would be contrary to equity and good conscience to withhold payment to the claimant for services rendered from January 2006 to June 2006 in the amount of $17,700.00, and for services rendered from August 2005 through December 2005 in amount of $ 13,570.00. Thus, the Court finds that the claimant is entitled to payment for the full amount of the claim.
In view of the foregoing, the Court is of the opinion to and does make an award to the claimant in the amount of $31,270.00.
Award of $31,270.00.